IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES,

    Plaintiff,

    v.

JEREMY MICHAEL GREEN,

    Defendant.

Case No. 23-10108-JWB

## MEMORANDUM AND ORDER

This matter is before the court on Defendant Jeremy Green's motion to suppress evidence. The motion was fully briefed and the court held an evidentiary hearing on May 7, 2024, making the motion ripe for decision. (Docs. 15, 23, 24.)  For the reasons stated herein, the motion to suppress (Doc. 15) is DENIED.

I.    **Facts**

The court finds the following facts from the evidence presented at the hearing.  Rooks County Sheriff's Deputy Salvador Ramirez was on patrol around 5 p.m. on May 26, 2023.  While he was on duty near Highway 183, a semi-truck and trailer caught his attention, so he began following the truck northbound on Highway 183.  Ramirez observed the semi touch or cross the white shoulder line on the highway seven times over the course of a few minutes while he was following.  Ramirez believed the driver was either impaired or was struggling to maintain lane. Failure to maintain lane is a violation of K.S.A. § 8-1522.  Ramirez activated his lights and initiated a traffic stop.  Defendant was the driver of the truck.  There was no one else in the truck cab. Ramirez collected Defendant's driver's license and insurance and returned to his patrol vehicle to run the information through dispatch.

Deputy David Hovis, K-9 Unit, arrived on the scene shortly after the stop commenced. Hovis spoke with Defendant at the truck, then walked over to Ramirez and said he was going to conduct a free air sniff with his dog while Ramirez ran the information and wrote Defendant a warning. Hovis told Defendant he should wait in front of Ramirez's patrol vehicle (which was parked behind the semi-trailer) for his safety while Hovis conducted the free air sniff. Defendant complied. Meanwhile, Hovis went to his own vehicle, which was parked behind Ramirez, and retrieved K-9 Luka, his certified police canine. Luka is trained to detect methamphetamine, heroin, and cocaine. Luka is trained to communicate a positive indication by pressing his nose to the source of the odor and sitting.

Hovis commenced the free air sniff by taking Luka on a leash to the rear driver's side of the semi-trailer. Hovis then gave Luka the command to begin the free air sniff. Hovis took Luka around the back of the semi-trailer and up the passenger's side, pausing to let Luka follow any potential scents. As Hovis and Luka walked up the passenger side, Luka would periodically come in contact with the semi-trailer—such as contacting the exterior with his head while sniffing, or placing his front paws on areas like the tires and axles to sniff higher in the air. Once they arrived at the passenger's side of truck's cab area, Luka's behavior changed markedly. He started tugging sharply on the leash to go towards the driver's side of the cab. Hovis can be heard on his bodycam recording exclaiming what sounds like, "He's got somethin'!" while Luka began tugging at his leash and was essentially dragging Hovis around the front of the truck to the driver's side of the vehicle.

Once on the driver's side of the truck, Luka proceeded rearward to the vicinity of the fuel tank; then he reversed course towards the front of the vehicle, paused forward of the running board area beneath the driver's door, then to the left front fender well; then he reversed course again and

2

moved back to the driver-side fuel tank before he reversed one final time and focused his attention on the driver's door. This back-and-forth activity along the driver's side of the cab certainly suggests that Luka was trying to localize and pinpoint the source of whatever odor he was investigating. Having ceased his back-and-forth movement along the side of the truck, and focused his attention on the driver's door, Luka then placed his front paws on the steps beneath the driver's door and raised himself up to touch his nose to the driver's door handle. At that point Luka became visibly more excited, his ears went back, and he appeared focused on finding a way to reach the driver's window. He pawed at the driver's steps and, within about one second, used those steps to leap up to the open driver's window above. Hovis pulled Luka down, but while searching along the cab area, Luka again jumped up into the window area. When Luka fell down out of the window for the second time, Hovis took Luka to the front of the cab because Luka had hit his head on the ground, and Hovis wanted to check the dog for injuries. Having confirmed Luka was unhurt, Hovis proceeded to take Luka down the driver's side of the semi-trailer. While doing so, Luka tried to go up the driver's side door a third time, but this time Hovis successfully restrained him from jumping up to the window. Hovis tugged on the leash and had Luka complete the free air sniff of the entire circumference of the semi-trailer truck by walking back to the rear of the semi-trailer. Hovis then returned Luka to his patrol vehicle.

Hovis testified that by the time Luka pressed his nose to the door handle, he believed he had probable cause to search the vehicle. Hovis also testified that it is his procedure to complete a free air sniff of the entire circumference of a vehicle after a positive alert in case there is additional contraband present. After returning Luka to his vehicle, Hovis had a brief discussion with other officers who had arrived on scene. Hovis mentioned that "it's a semi" so "[Luka] can't indicate it like normal," and "we're good."

Hovis started walking back towards Ramirez's patrol vehicle and the semi-truck. Defendant was standing in front of Ramirez's patrol vehicle. Defendant initiated dialogue with Hovis when he asked the latter, "All good?" The following exchange then occurred. Hovis said, "Well, I got some questions first."

Defendant: "Yeah."

Hovis: "You saw my dog jump up there."

Defendant: "Yeah"

Hovis: "He's never done that before."

Defendant: "I can't believe he actually did that."

Hovis: "Yeah, so—so you told me that there was nothing in the vehicle."

Defendant then proceeded to deny that there was anything illegal in the vehicle, that the only thing he had was "vapes." Hovis told Defendant that Luka's jumping up to the window on the semi was "an indication" and the vehicle would be searched. Hovis began walking away and stated, "We'll talk after we search, OK?" Defendant responded, "Chances are, if the dog hit, there probably is [something illegal in the vehicle]." When Hovis asked for clarification, Defendant maintained he did not have anything illegal in the truck, but that "there's a bunch of crap in there." Hovis asked Ramirez to stand with Defendant in front of Ramirez's patrol vehicle and to pat Defendant down "for safety."

Hovis then proceeded back to the semi with other officers. They searched the truck cab. During the search the officers found a black case with small individual bags containing what appeared to be methamphetamine inside the cab. Hovis then placed Defendant under arrest for possession of methamphetamine.

The officers also found used methamphetamine pipes during the search.  One of those pipes was in the driver's side door compartment, immediately behind where Luka had pressed his nose to the door handle.  Upon finding this pipe, Hovis exclaimed, "This is the pipe!  Right where the dog indicated!"  The bagged substance was field tested and found presumptively positive for methamphetamine.  The search also uncovered a 9 mm handgun, some ammunition, and a holster.

## II.    Summary of Arguments

Defendant argues that he has standing to contest the search because he was in lawful possession of the vehicle; that is, he had permission to drive from the owner.  (Doc. 15 at 8–9.) Defendant challenges the search and seizure of his vehicle and person on two grounds: (1) that Ramirez lacked probable cause to conduct the traffic stop, and (2) Luka's breach of the cab through the window was an unlawful search.  (*Id.* at 10.)  Defendant argues that K.S.A. § 8-1522(a) requires more than a minimal lane breach to justify the traffic stop.  (*Id.* at 11.)  Defendant further argues that the dog sniff unreasonably infringed his expectation of privacy and trespassed for the purpose of obtaining information.  (*Id.* at 11–21.)  The resulting search and seizure were not supported by probable cause, and the evidence obtained should thus be suppressed.  (*Id.* at 21–23.)  Finally, Defendant argues that his Fifth Amendment *Miranda* rights were violated.  (*Id.* at 23–25.)  Specifically, Defendant claims he was under un-Mirandized custodial interrogation when he was reapproached by Hovis while Defendant was standing in front of Ramirez's patrol vehicle after Hovis completed the free air sniff with Luka.  Defendant argues his statements to Hovis must be suppressed.

In response, the government does not contest standing; but, it argues that Defendant's notable crossing of the white line seven times before the initiation of the stop was sufficient to constitute a traffic violation under Kansas law, thus justifying the stop.  (Doc. 23 at 4.)  Alternatively, the government argues that Ramirez had reasonable suspicion of driver impairment independent of any statutory violation, which also provides sufficient justification for the stop.  (*Id.* at 5.)  The government

further asserts that there was no Fourth Amendment violation from the free air sniff because momentary contact with the outside of the vehicle by a dog is not a trespass. (*Id.* at 7.) The government also asserts that the dog's nose entering the vehicle was not a trespass. (*Id.* at 7–8.) And, even assuming there was an illegal trespass, the government argues there is no causal nexus between such trespass and the discovery of evidence. (*Id.* at 8–9.) The government argues that Luka's pressing the door handle with his nose, along with Luka's change in behavior, was sufficient to establish probable cause before Luka jumped into the window. (*Id.* at 9.) The government further claims that even if there was a constitutional violation, suppression would not be necessary due to officer good faith. (*Id.* at 12–17.) Finally, the government argues that the statements made to Hovis by Defendant after the free air sniff were noncustodial and voluntary. (*Id.* at 17–20.)

III.    **Analysis**

A.  **The Initial Stop Was Legal**

An initial traffic stop is justified at its inception if "an officer has . . . a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009). Here, Ramirez's observation that the semi touched or crossed the white fog line seven times in the few minutes he was following Defendant is sufficient to establish reasonable suspicion a traffic violation occurred. K.S.A. § 8-1522(a) provides that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic . . . vehicle[s] shall be driven as nearly as practicable entirely within a single lane . . . ." In *United States v. Zabalza*, 346 F.3d 1255 (10th Cir. 2003), the Tenth Circuit affirmed a denial of a motion to suppress where the officer initiated a stop based on K.S.A. § 8-1522(a) when a vehicle crossed the center lane twice. *Id.* at 1257–58. There is no evidence here that the repeated crossing or touching of the white line was done due to

6

it being impracticable to stay within a single lane.  There was more than a minimal lane breach.

The stop here was thus justified by reasonable suspicion under binding precedent.

### B.  There Was Probable Cause to Search the Truck Cab

The warrantless search of a vehicle is reasonable under the Fourth Amendment if police

have probable cause to believe evidence of a crime will be found inside.  *United States v. Anderson*,

658 F. Supp. 3d 1000, 1011 (D. Kan. 2023) (citing *Wyoming v. Houghton*, 526 U.S. 295, 300

(1999)).  The use of a well-trained narcotics-detection dog on the exterior of a car during a traffic

stop "generally does not implicate legitimate privacy interests" and "does not rise to the level of a

constitutionally cognizable infringement." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).  But a

free air sniff with a narcotics dog may be unreasonable under the Fourth Amendment if it (1)

violates a person's reasonable expectation of privacy, or (2) physically occupies private property

for the purpose of obtaining information.  *See United States v. Jones*, 565 U.S. 400, 404–06 (2012).

Defendant brings two arguments to counter the general rule that using a narcotics-detection dog

during a traffic stop does not violate the Constitution: (1) that the government trespassed for the

purpose of obtaining information when Hovis and Luka contacted the outside of the vehicle, and

(2) Luka either infringed Defendant's reasonable expectation of privacy or physically trespassed

against Defendant's vehicle for the purpose of obtaining information when he dove into the

window.

The physical contact to the outside of the vehicle was not a trespass within the meaning of

the Fourth Amendment.  The government may commit a constitutionally relevant trespass by

engaging "in a physical intrusion of a constitutionally protected area in order to obtain

information . . . ." *United States v. Acuna*, No. 21-10035-01,02-JWB, 2022 WL 3081419, at \*5

(D. Kan. Aug. 3, 2022) (quoting *Jones*, 565 U.S. at 407).  But a person or dog momentarily

touching the exterior of a vehicle in a public place is qualitatively different from the physical intrusions found to be unreasonable searches in other contexts. *See id.* at \*5–6 (examining Supreme Court caselaw involving dog sniffing). And the Fourth Amendment is concerned with physical trespass *to obtain information*. So, even assuming the brief instances of contact by Luka and/or Hovis during the free air sniff were a physical trespass, the contact was not for purposes of obtaining information; that is, the dog did not touch the vehicle exterior to obtain information *from* the contact. Rather, Luka touched the vehicle exterior incidentally while following a scent. And while physical proximity to the odor likely aided the dog in tracking the scent, it is implausible that exterior surface contact materially aided the dog in detecting the odor. *Id.* at \*7. The court concludes that the incidental physical contact with the semi-trailer truck exterior did not result in an unreasonable search.

The critical moment in the Fourth Amendment calculus occurred when Luka leapt up into the window of the truck, thereby placing his nose into the interior of the vehicle. If Officer Hovis had probable cause to search the vehicle prior to that event, then the dog's intrusion into the cab did not violate the Fourth Amendment. Hovis testified that the changes in Luka's behavior that he observed while the dog was exploring the exterior of the driver's side of the truck, combined with Luka pressing his nose to the driver's door handle, told Hovis that Luka had detected the odor of illegal drugs (the only substances he was trained to detect) coming from the vehicle, and that this established probable cause to search Defendant's truck. As noted earlier, there was a distinct change in Luka's behavior as he progressed with the free air sniff. Beginning as early as Luka's arrival at the passenger door of the semi, the increase in his pace and intensity became notable as the dog pulled on his leash and practically dragged Hovis around the front of the truck to the driver's side of the cab. Thereafter the dog worked intently up and down the driver's side of the

cab as he narrowed his search toward the driver's door, ultimately touching his nose to the door handle and then attempting to reach the open window, above.  According to Officer Hovis, these observable behaviors told him that Luka had detected the odor of illegal drugs and established probable cause to search.  The court agrees.  Based on the observed behavior of the dog on the video at the hearing, and Hovis's credible testimony that he considered the door handle nose press and change of behavior an alert to the presence of narcotics, the court finds that there was probable cause of criminal activity sufficient to search the cab before Luka broke the plane of the window.[1]  Indeed, even the dog's leap toward the window itself, before actually breaking the interior plane of the truck and sniffing the inside of the cab, supports a finding of probable cause in this case.  It is clear from the video that Luka had determined that there was something with an odor of illegal drugs inside the truck, and Luka was looking for a way to get to the source of that odor.

This activity stands in stark contrast to cases like *United States v. Otero*, No. 22-10068-JWB-01, 2023 WL 5336714 (D. Kan. Aug. 18, 2023), where the court suppressed evidence from a search because the narcotics dog only alerted after entering the interior of the vehicle with his nose. *Id.* at *7–8.  Instead, this case resembles *United States v. Moore*, 795 F.3d 1224 (10th Cir. 2015), where the Tenth Circuit affirmed the denial of a motion to suppress where a trained narcotics dog leaped into a vehicle window after alerting the officer to the perceived presence of narcotics with a "really good change of behavior" despite the dog not giving an official final indication before entering the window. *Id.* at 1231–33.  In so doing, the Tenth Circuit held that an alert short of a final indication was sufficient to establish probable cause for the officer to search the vehicle. *Id.* at 1232.  The government has justified its actions in this case because there was

---

[1]   Luka's determination to return to the window a second and third time, while not determinative of probable cause, also corroborates the officer's determination he had probable cause to search the vehicle.

an alert before interior entry, and the motion to suppress on Fourth Amendment grounds is thus

denied.

### C.  There Was No *Miranda* Violation

Defendant argues that Hovis's questioning after Luka's alert was un-Mirandized custodial

interrogation and his statements must be suppressed.  (Doc. 15 at 25.)

> Whether a suspect is in custody is an objective determination requiring courts to examine "(1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers' questioning was accusatory or coercive; and (3) whether the police made [defendant] aware that [he] was free to refrain from answering questions, or to otherwise end the interview."

*United States v. Goebel*, 959 F.3d 1259, 1268–69 (10th Cir. 2020) (alterations in original) (quoting

*United States v. Revels*, 510 F.3d 1269, 1275 (10th Cir. 2007)).  Here, while Ramirez still had

Defendant's driver's license, the questioning was not police dominated or coercive.  Defendant

spoke to Hovis first, and Hovis's tone remained conversational as he asked whether the vehicle

contained contraband.  Hovis did not brandish a weapon or threaten Defendant in any way.  Thus,

even though Hovis did not inform Defendant he was free to refrain from answering questions,

Defendant was not in custody during the questions and thus his right to remain silent was not

violated.  This case resembles *Goebel*, where the officer had detained the defendant by ordering

him to step away from his vehicle onto a sidewalk.  *Id.* at 1267.  Yet the Tenth Circuit found that

directing the defendant to the sidewalk and questioning him did not convert the interaction to

custodial interrogation.  *See id.* at 1264, 1269.  In reaching this conclusion, the Tenth Circuit

reasoned that the officer "never raised his voice, nor drew his gun, nor made any sort of threat.

The conversation was very brief and took place on a public sidewalk.  These facts fit comfortably

within Tenth Circuit precedent holding that a *Miranda* advisement is not required."  *Id.* at 1269

(citations omitted).  The court thus finds that Defendant was not in custody when Defendant

initiated the conversation with a question to Hovis or when Hovis responded with questions of his own, and thus Hovis was not required to Mirandize Defendant.  The court denies the motion to suppress statements made by Defendant on Fifth Amendment grounds.

## IV.    Conclusion

Defendant's motion to suppress (Doc. 15) is DENIED.

IT IS SO ORDERED.

Dated: May 16, 2024                         /s/John W. Broomes
                                            JOHN W. BROOMES
                                            UNITED STATES DISTRICT JUDGE